**MAGIC COAL COMPANY, Appellant,**

v.

**Ronnie FOX; Zaring P. Robertson, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**Peabody Coal Company, Appellant,**

v.

**Billy Gene Hawes; Eddie Bealmear; Sheila C. Lowther, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**Nos. 1999–SC–0163–WC, 1999–SC–0509–WC.**

Supreme Court of Kentucky.

May 18, 2000.

John C. Morton, Samuel J. Bach, Morton & Bach, Henderson, for Appellant Magic Coal Co.

Philip J. Reverman, Boehl, Stopher, & Graves, William P. Swain, Phillips, Parker, Orberson, & Moore, P.L.C., Louisville, for Appellant Peabody Coal Co.

John S. Sowards, Jr., Wilson, Sowards, Bowling, & Costanzo, Lexington, for Appellee Fox.

A. V. Conway, II, Hartford, for Appellee Hawes.

Harry R. Hinton, Madisonville, for Appellee Bealmear.

## OPINION OF THE COURT

These workers' compensation appeals concern the portion of KRS 342.315(2) which became effective December 12, 1996, and which states that the findings and opinions of designated university medical evaluators "shall be afforded presumptive weight." At issue is whether the amendment governs claims which arose before its effective date.

The 1996 version of KRS 342.315 provides, in pertinent part, as follows:

(1) The commissioner shall contract with the University of Kentucky and the University of Louisville medical schools to evaluate workers who have had injuries or become affected by occupational diseases covered by this chapter. Referral for evaluation may be made to one (1) of the medical schools whenever a medical question is at issue.

(2) The physicians and institutions performing evaluations pursuant to this section shall render reports encompassing their findings and opinions in the form prescribed by the commissioner. The clinical findings and opinions of the designated evaluator shall be afforded presumptive weight by arbitrators and administrative law judges and the burden to overcome such findings and opinions shall fall on the opponent of that evidence. When arbitrators or administrative law judges reject the clinical findings and opinions of the designated evaluator, they shall specifically state in the order the reasons for rejecting that evidence.

Two other amendments which became effective on December 12, 1996, also are relevant to a consideration of the question at issue. KRS 342.0015 provides, in pertinent part, that the "procedural provisions" of the 1996 Act "shall apply to all claims irrespective of the date of injury or last exposure, including, but not exclusively, the mechanisms by which claims are decided and workers are referred for medical evaluations." KRS 342.316(3)(b)4.b. provides that the arbitrator to whom an occupational disease claim is assigned "shall" refer the worker to a university evaluator for examination. There is no comparable requirement concerning injury claims, leaving it to the discretion of the factfinder whether to order an evaluation in a given case. These appeals both involve retraining incentive benefit (RIB) claims.

*Magic Coal Co. v. Fox:*

The claimant was employed in the coal mining industry for over 19 years and last worked in March, 1992. In February, 1997, he filed a claim for a RIB. Among the contested issues was whether he suffered from coal workers' pneumoconiosis and whether the university medical ex-

pert's report was entitled to presumptive weight pursuant to KRS 342.315. Evidence of the presence of the disease was conflicting, and the report of the university evaluator was negative. In a decision rendered on September 9, 1997, the Administrative Law Judge (ALJ) determined that, to the extent that it afforded presumptive weight to the findings and opinions of university evaluators, the 1996 amendment to KRS 342.315 was substantive and should not be applied to a claim which arose before the amendment's effective date. The ALJ indicated that the credentials of all of the expert witnesses were worthy of respect but chose to rely upon the claimant's witnesses and awarded a RIB.

This appeal was considered by the Workers' Compensation Board (Board) together with several others, including *Peabody Coal Co. v.. Hawes* and *Peabody Coal Co. v. Bealmear.* The Board rejected the argument that KRS 342.314(2) simply shifts the burden of going forward with proof to the party who opposes the evaluator's report, indicating that such a construction would render the amendment ineffectual. The Board determined, instead, that the amendment creates a rebuttable presumption which favors the university evaluator's opinion, which represents an alteration in the overall burden of proof placed upon the parties, and which is substantive in nature. For that reason, the Board concluded that the findings and opinions of university evaluators should not be given "presumptive weight" in those claims which arose before December 12, 1996. The Court of Appeals affirmed the Board.

Magic Coal Co. (Magic) emphasizes that this is a RIB claim which, unlike a claim for income benefits, is controlled by the law on the date of filing rather than the law on the date of last exposure. *Breeding v. Colonial Coal Co.,* Ky., 975 S.W.2d 914 (1998). This claim was filed after December 12, 1996; therefore, Magic asserts, the December 12, 1996, amendments to Chapter 342 controlled the claim. Second,

Magic argues that KRS 342.315(2) does not alter the burden of proof but is a procedural mechanism to ensure the ALJ's reliance upon impartial expert testimony "when alternative medical testimony is not particularly convincing." Emphasizing that the presumption is rebuttable, not conclusive, it argues that the presumption is procedural in nature. See *Boggs v. Blue Diamond Coal Co.,* 497 F.Supp. 1105 (1980); *General Refractories Co., Inc. v. Henderson,* Ky., 232 S.W.2d 846 (1950).

Claimant responds that in the absence of specific language to the contrary, the meaning of "presumptive weight" should be dictated by KRE 301. In the alternative, he argues that if the Board's construction of the term is correct, the amendment is substantive and should not be applied in instances where the injury or last exposure occurred before the amendment's effective date. Finally, claimant raises four arguments against the constitutionality of the provision in the event that it is construed as restricting the authority of the ALJ to weigh conflicting medical evidence.

*Peabody Coal Co. v. Hawes, et. al.:*

This appeal involves two different RIB claims. They were filed against Peabody Coal Co. (Peabody) by Billy Gene Hawes and by Eddie Bealmear. In each instance, the last exposure occurred before December 12, 1996, and a RIB claim had been filed and was pending before the ALJ on December 12, 1996. It is undisputed that the pre-December 12, 1996, version of the Act was the controlling substantive law. In each instance, the ALJ determined that the "presumptive weight" provision was procedural in nature and did apply to the claim. The ALJ also determined, in each instance, that the worker had introduced favorable evidence from two well respected pulmonary specialists, one of whom was the only expert who had actually examined the worker as well as read an x-ray. In each instance, the ALJ was persuaded that the evidence offered by the worker overcame the testimony of the university evalu-

ator. The Board affirmed the result on the basis that the presumptive weight provision was substantive, and the Court of Appeals affirmed.

The questions presented on appeal concern whether the amendment is procedural or substantive. If the amendment is procedural, a question arises concerning the type of evidence which is necessary to overcome the presumptive weight of a university evaluator's testimony. No constitutional question is raised.

As a general rule, the law in effect on the date of injury or last injurious exposure is deemed to control a worker's rights and an employer's obligations with regard to any claim arising out of and in the course of the employment. Although a retraining requirement was adopted in 1994, KRS 342.732(1)(a) permitted workers who continued to be employed in the mining industry to receive a RIB; therefore, there was no date of last exposure from which to fix the rights of the parties with regard to RIB claims filed by working miners. In *Arch of Kentucky, Inc. v. Thomas*, Ky., 895 S.W.2d 578 (1995), the Court determined that, unlike other claims for occupational disease, RIB claims were payable at the rate in effect on the date the claim was filed.

With regard to the appeals which are presently at issue, Hawes' and Bealmear's last exposure to coal dust occurred before December 12, 1996, and their RIB claims had been filed and were pending before the ALJ on December 12, 1996. Fox's last exposure occurred before December 12, 1996, but his RIB claim was filed after December 12, 1996. The Board rendered a decision on all three claims on January 30, 1998. On July 23, 1998, during the pendency of the employers' appeals to the Court of Appeals, this Court rendered a

decision in *Breeding v. Colonial Coal Co.*, Ky., 975 S.W.2d 914 (1998).

*Breeding* concerned a RIB claim which was filed in 1995 by a worker who had retired from the mining industry in 1991. The 1996 amendments were enacted during the pendency of the appeal to the Board. When the appeal was before the Court of Appeals, the employer asserted for the first time that the December 12, 1996, version of KRS 342.732(1)(a) was remedial and controlled the claim. Relying upon *Arch of Kentucky, Inc. v. Thomas, supra*, we determined that the law on the date the claim was filed controlled the worker's entitlement to a RIB and noted that the claim would be subject to a remedial amendment which became effective during its pendency before the ALJ. We concluded, however, that the ALJ could not have erred by failing to apply an amendment which became effective after the decision was entered. We also noted that the employer had failed to raise an argument that the 1996 amendment to KRS 342.732(1)(a) was remedial before the Board and concluded, therefore, that the Court of Appeals should not have considered the question.[1]

Magic's argument has been that the 1996 amendments to KRS 342.315 were remedial legislation and that they applied, retroactively, without regard to the date of a worker's last exposure to coal dust. Magic has asserted that KRS 342.0015 indicated a legislative intent for the 1996 amendments to KRS 342.315 be applied to all workers' compensation claims which were filed on or after the effective date of the amendment. In its appeal to this Court, Magic relies for the first time upon *Breeding v. Colonial Coal Co., supra*, as authority for raising the additional proposition that because Fox's claim was filed after December 12, 1996, the amended versions of both KRS 342.732(1)(a) and KRS

---

1. In each of the claims presently at issue, the last exposure to coal dust occurred before December 12, 1996. Hawes' and Bealmear's claims were filed and pending before the ALJ on that date. Fox's claim was filed after that date. Neither employer argued to the ALJ, the Board, or the Court of Appeals that the December 12, 1996, version of KRS 342.732(1)(a) was remedial.

342.315 apply to the claim, without regard to whether either provision is remedial.

■ We begin by noting that Magic raised no argument before the ALJ or the Board which asserted that the date of filing fixed the rights of the parties with regard to the claimant's RIB claim and, therefore, that the version of KRS 342.732(1)(a) and of KRS 342.315 which became effective on December 12, 1996, controlled the claim. We conclude, therefore, that the argument is not properly preserved for review. In any event, our decision in *Breeding v. Colonial Coal Co.*, *supra*, was rendered after Fox's claim was considered by the ALJ and, therefore, could not be a basis for determining that the decision was erroneous.

■ KRS 446.080(3) provides that, "No statute shall be construed to be retroactive, unless expressly so declared." With regard to the intent of the legislature in enacting the 1996 amendments to the Act, KRS 342.0015 provides, in pertinent part, as follows:

> Procedural provisions of 1996 (1st Extra.Sess.) Ky. Acts ch. 1 shall apply to all claims, irrespective of the date of injury or last exposure, including, but not exclusively, the mechanisms by which claims are decided and workers are referred for medical evaluations.

It is apparent that KRS 342.316(3)(b)4.b. relates to the mechanism by which workers are referred for medical evaluations in occupational disease claims. It also is apparent that KRS 342.315(2) relates to the mechanisms by which claims are decided. We, therefore, view KRS 342.0015 as expressing a clear legislative intent for KRS 342.315 and KRS 342.316(3)(b)4.b., to apply to all claims pending before an arbitrator or ALJ on or after December 12, 1996. This appeal turns upon what we discern the meaning and intent of KRS 342.315(2) to be. The role of the Court in construing a legislative act is to effectuate the intent of the legislature. Where that intent is not clear, we remain mindful of the princi-

ple embodied in KRS 446.080(3) that, unless the legislature clearly indicates otherwise, legislation is not intended to affect the legal consequences of events which occurred before its enactment.

Prior to December 12, 1996, KRS 342.315 permitted an ALJ, upon motion of either party or on the ALJ's own motion, to appoint up to three "disinterested and duly qualified physicians or surgeons" to examine an injured worker and to testify by means of a joint report. Physicians who agreed to participate were limited to charging $75.00. An ALJ was permitted to allow the reasonable cost of x-rays and an additional fee of $25.00 if such a physician was deposed. KRS 342.315 contained no standard or procedure for assuring a supply of "disinterested and duly qualified physicians or surgeons."

Taken together, the 1996 amendments to KRS 342.315 and KRS 342.316 provide for contracts with the University of Kentucky and University of Louisville medical schools for medical examinations. They require a university evaluation in all occupational disease claims and provide that the "clinical findings and opinions" of the university evaluator "shall be afforded presumptive weight." They indicate that the burden to overcome the findings and opinions of a university evaluator falls upon the opponent of the evidence. Finally, they indicate that if an arbitrator or ALJ rejects the findings and opinions of a university evaluator, the reasons for doing so must be specifically stated in the order.

■ The term "presumptive weight" is one which the parties concede is not found in prior Kentucky law and one which is not defined in Chapter 342. KRS 342.315(2) does not evince a legislative intent for the clinical findings and opinions of a university evaluator to be conclusive. It anticipates that the opponent of a university evaluator's report may introduce countervailing evidence which will overcome the report; furthermore, KRS 342.315(2) does not prohibit the fact-finder from rejecting a finding or opinion of a university evalu-

ator but requires only that the reasons for doing so must be specifically stated. In the absence of a definition of the term "presumptive weight," either by prior judicial decision or by statute, we conclude that the legislature intended to create a rebuttable presumption.

■ A presumption has been defined as a rule of law which creates or recognizes a probative relationship between two facts, one of which is proved (the proven fact) and the other of which is unproved (the presumed fact), and which attributes a procedural significance to that relationship. Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 10.00 (3d ed.1993). The presumption created by KRS 342 .315(2) requires the fact-finder to rely upon the clinical findings and opinions of the university evaluator unless that testimony is properly rebutted by the opponent of the evidence. The Board determined, that the presumption created by KRS 342.315(2) must be rebutted by "clear, convincing and positive proof." We note, however, that Kentucky requires the proof of facts by the "clear and convincing evidence" standard only in a few instances. Among those instances are establishing a lost will, termination of parental rights, illegitimacy of a child born in wedlock, unfitness of a natural parent for custody of a child, and fraud. Lawson, *supra*, § 9.00. The clear and convincing evidence standard is not found in Chapter 342, and we have been directed to no judicial decision which has employed that standard with regard to the essential facts of a workers' compensation claim. In view of the foregoing, we are persuaded that had the legislature intended for the presumption created by KRS 342.315(2) to be overcome only by clear and convincing evidence, it would have so declared.

■ Although KRS 342.315(2) indicates that the "burden to overcome" a university evaluator's testimony falls on the opponent of the evidence, it does not provide a standard for determining the type of evidence which is necessary in order to do so and

does not explicitly shift the risk of nonpersuasion to the opponent of the evidence. Under those circumstances, we conclude that the procedural effect of the presumption created by KRS 342.315(2) is properly governed by KRE 301 which provides as follows:

> In all civil actions and proceedings when not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

The proven fact upon which the rebuttable presumption at issue is based is that the services of those physicians who testify are provided pursuant to a contract between the Department of Workers' Claims and the University of Kentucky and University of Louisville medical schools. Particularly in claims for occupational disease, but also in some injury claims, fact-finders are confronted with medical evidence in which the clinical findings and opinions introduced on behalf of one party are vastly different from those introduced on behalf of the opponent. It is clear that clinical findings and opinions from an unbiased medical expert would reasonably be expected to provide an accurate assessment of the medical status of the individual whose condition was at issue and would assist the fact-finder in weighing the conflicting evidence presented by the parties. As amended, KRS 342.315 assures that such testimony will be considered in all occupational disease claims and provides a mechanism for obtaining sufficient numbers of such experts. It is not unreasonable to infer that, with regard to issues which fall within the province of medical experts, the clinical findings and opinions of physicians who are affiliated with a medical school are informed by some degree of expertise and are more likely to be

free from a preconceived bias toward either the plaintiff or the defense than those of a physician who has been hired to testify on behalf of the plaintiff or defendant. For that reason, it is neither unreasonable nor irrational to presume that the clinical findings and opinions of a university evaluator accurately reflect the medical condition of the claimant in the absence of evidence to rebut that presumption.

It has long been the rule that the claimant bears the burden of proof and the risk of nonpersuasion before the fact-finder with regard to every element of a workers' compensation claim. *Young v. Burgett,* Ky., 483 S.W.2d 450 (1972); *Roark v. Alva Coal Corporation,* Ky., 371 S.W.2d 856 (1963); *Wolf Creek Collieries v.. Crum,* Ky.App., 673 S.W.2d 735 (1984); *Snawder v. Stice,* Ky.App., 576 S.W.2d 276 (1979). In order for that burden to be sustained, no less than substantial evidence of each element of the claim must be introduced. Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Special Fund v. Francis,* Ky., 708 S.W.2d 641 (1986); *Smyzer v. B.F. Goodrich Chemical Co.,* Ky., 474 S.W.2d 367 (1971). Substantial evidence also has been equated to evidence which would be sufficient to survive a motion for a directed verdict if the matter were being tried to a jury. *Kentucky Utilities Co. v. Hammons,* Ky., 284 Ky. 437, 145 S.W.2d 67, 71 (1940). Although substantial evidence is sufficient to support an essential finding of fact, it will not necessarily require a favorable finding, even in instances where the contrary evidence is less than substantial. *Lee v. International Harvester Co.,* Ky., 373 S.W.2d 418 (1963). Only evidence which is so overwhelming that no reasonable person would fail to be persuaded by it will compel a particular finding. *Special Fund v. Francis, supra.*

Where the question at issue is one which properly falls within the province of medical experts, the fact-finder may not disregard the uncontradicted conclusion of a medical expert and reach a different conclusion. *Mengel v. Hawaiian–Tropic Northwest and Central Distributors, Inc.,* Ky., 618 S.W.2d 184 (1981). By operation of KRS 342.315(2), the clinical findings and opinions of the university evaluator are presumed to accurately reflect the claimant's medical condition. For that reason, unless evidence is introduced which rebuts the clinical findings and opinions of the university evaluator, they may not be disregarded by the fact-finder. To the extent that the university evaluator's testimony favors a particular party, it shifts to the opponent the burden of going forward with evidence which rebuts the testimony. If the opponent fails to do so, the party whom the testimony favors is entitled to prevail by operation of the presumption. Stated otherwise, the clinical findings and opinions of the university evaluator constitute substantial evidence with regard to medical questions which, if uncontradicted, may not be disregarded by the fact-finder.

KRS 342.285 was not amended in the 1996 Extraordinary Session. It has been construed to mean that the fact-finder has the sole discretion to determine the quality, character, and substance of evidence and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985); *Kentucky Carbon Corp. v. Dotson,* Ky.App., 573 S.W.2d 368 (1978). The fact-finder has the sole authority to judge the weight to be afforded the testimony of a particular witness. *McCloud v. Beth–Elkhorn Corp.,* Ky., 514 S.W.2d 46 (1974). The fact-finder may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores,* Ky., 560 S.W.2d 15, 16 (1977). Together, KRS 342.315 and KRS 342.316 assure that testimony from a disinterested medical expert will be considered by the fact-finder in all

occupational disease claims. We do not view KRS 342.315(2) as restricting the fact-finder's authority to weigh conflicting medical evidence. We construe it to mean only that because it is presumed that the clinical findings and opinions of a university evaluator will accurately reflect the worker's medical condition, a reasonable basis for disregarding that testimony must be specifically stated by the fact-finder. In other words, the parties are entitled to be informed of the basis for the decision. See *Shields v. Pittsburgh & Midway Coal Mining Co.*, Ky.App., 634 S.W.2d 440, 444 (1982). The presumption created by KRS 342.315(2) neither shifts the risk of non-persuasion to the defendant nor "raises the bar" with regard to the claimant's burden of persuasion.

In summary, the amendments to KRS 342.315 which became effective on December 12, 1996, apply to all claims pending before the fact-finder on or after that date. KRS 342.315(2) creates a rebuttable presumption which is governed by KRE 301 and, therefore, does not shift the burden of persuasion. Pursuant to KRS 342.315(2), the clinical findings and opinions of the university evaluator constitute substantial evidence of the worker's medical condition which may not be disregarded by the fact-finder unless it is rebutted. Where the clinical findings and opinions of the university evaluator are rebutted, KRS 342.315(2) does not restrict the authority of the fact-finder to weigh the conflicting medical evidence. In instances where a fact-finder chooses to disregard the testimony of the university evaluator, a reasonable basis for doing so must be specifically stated.

The version of KRS 342.732(1)(a) which controls these claims requires a finding that the affected worker has a radiographic classification of 1/0, ½, or 1/2. In each of these claims, the ALJ who considered the evidence was persuaded that the claimant had introduced substantial evidence that he suffered from category 1 coal workers' pneumoconiosis and that the

testimony introduced by the claimant was more persuasive than the testimony of the university evaluator. Claimant Fox introduced evidence from two physicians, both of whom interpreted x-rays taken in January and February, 1997. Dr. Myers categorized both x-rays as 1/1. Dr. Baker categorized the January x-ray as 1/0 and the February x-ray as 2/1. The defense introduced reports by Drs. Powell and Westerfield which indicated that the January x-ray was negative. Dr. Joyce, the designated university evaluator, categorized an April, 1997, x-ray as 0/0.

■ Among other things, Fox argued that if the 1996 amendments to KRS 342.315 did apply to his claim, the term "presumptive weight" should be construed consistently with KRE 301. The ALJ who considered the claim did not apply the amendments, decided to rely upon Fox's experts, and gave no specific reason for rejecting the clinical findings and opinions of the designated university evaluator. Under those circumstances, the claim must be remanded for further proceedings pursuant to KRS 342.315(2). In view of the fact that we have construed KRS 342.315(2) as creating a rebuttable presumption which is governed by KRE 301 and which does not alter the claimant's burden of persuasion, it is unnecessary for us to address the constitutional questions which he has raised.

Claimant Hawes has argued that if the amended version of KRS 342.315 controls his claim, he offered sufficient evidence to rebut the testimony of the university evaluator. Drs. Powell and Houser testified on his behalf. Dr. Powell, a B-reader and pulmonary specialist, examined the claimant in November, 1996. He obtained an x-ray which he gave a quality grade of 1 and reported as indicating category 1/0 coal workers' pneumoconiosis. Dr. Houser examined the claimant in September, 1996. He obtained an x-ray which he classified as grade 1 and reported as indicating category ½ coal workers' pneumoconiosis.

Drs. Broudy and Wright testified for the defense. They reviewed the September and November, 1996, x-rays and also classified them as grade 1. Dr. Broudy reported no evidence of pneumoconiosis on either x-ray. Dr. Wright classified the September x-ray as category % and the November x-ray as category 0/1.

Dr. Joyce, the university evaluator and a B-reader, reviewed an x-ray made in March, 1997. She classified the x-ray as grade 1 and reported category 0/1.

 The ALJ chose to rely upon Hawes's experts based upon the fact that they were "well-qualified pulmonary specialists" and that they were the only physicians to examine the claimant as well as to review x-ray evidence. We also note that, although Dr. Joyce concluded that Hawes did not suffer from category 1 pneumoconiosis, her report did not indicate that his x-ray was entirely negative. In any event, we are persuaded that the ALJ stated a reasonable basis for choosing to rely upon the claimant's experts and also that the finding that claimant suffered from category 1 coal workers' pneumoconiosis was supported by substantial evidence. We conclude, therefore, that the award which was entered was proper.

Mr. Bealmear asserts that the decision of the Court of Appeals should be affirmed. Drs. Powell and Houser testified on his behalf. Dr. Powell, a B-reader and a pulmonary specialist, reviewed a September 10, 1996, x-ray. He classified the film as quality grade 1 and as indicating category 1/0 coal workers' pneumoconiosis. Dr. Houser, also a pulmonary specialist, examined the claimant on November 29, 1993. He obtained an x-ray which he classified as quality 1 and as indicating the presence of category 1/0 coal workers' pneumoconiosis.

Dr. Wright testified for the employer. He reviewed the September 10, 1996, x-ray and reported that it was of acceptable quality. He found no evidence of pneumoconiosis.

Dr. Goldman, a B-reader, served as the university evaluator. He reviewed an x-ray made on March 11, 1997. He classified the film as quality 1 and as completely negative for pneumoconiosis.

The ALJ chose to rely upon Mr. Bealmear's experts based upon the fact that they were "well-qualified pulmonary specialists," and that Dr. Houser had actually examined the claimant as well as read his chest x-ray. We are persuaded that the ALJ stated a reasonable basis for choosing to rely upon the claimant's experts and also that the finding of category 1 coal workers' pneumoconiosis was supported by substantial evidence. We conclude, therefore, that the award which was entered was proper.

The decision of the Court of Appeals is reversed with regard to Mr. Fox's claim, and the claim is remanded to the ALJ to make the findings required by KRS 342.315(2). The Board and the Court of Appeals affirmed the awards to Mr. Hawes and Mr. Bealmer; therefore, although our reasoning is different, we affirm the decision of the Court of Appeals with regard to their claims.

LAMBERT, C.J., and COOPER, JOHNSTONE, KELLER, and WINTERSHEIMER, J.J., concur.

GRAVES, J., dissents by separate opinion.

STUMBO, J., not sitting.

GRAVES, Justice, Dissenting.

I dissent from so much of the majority's opinion that states it is rational and reasonable to conclude that physicians engaged in academic medicine at the University of Kentucky and the University of Louisville will probably provide a more objective or accurate diagnostic assessment than an equally or better credentialed physician who may work elsewhere. The legislature's affording presumptive weight to the clinical findings and opinions of local medical school teachers is myopic.

There is no rational reason to believe a university physician is better qualified solely because he works in Lexington or Louisville. It is unreasonable to give presumptive weight to University of Kentucky and University of Louisville physicians' views over other equally well-qualified and highly motivated physicians located throughout this Commonwealth and the United States.

Under KRS 342.315(2), the evaluator from the University of Kentucky or the University of Louisville diagnoses the worker's medical condition. Based upon the medical conclusions of the university physician, it is mandatorily presumed that this physician's opinion is correct. This is nothing more than sophistical conjecture. No rational connection exists between the fact that one is a University of Kentucky or University of Louisville physician, and the fact that an opinion from such a physician is presumptively correct. While both are accredited medical schools, the physicians working there are no more clinically successful than well-credentialed physicians at places such as Vanderbilt, Duke, Johns Hopkins, and the Mayo Clinic, merely due to their place of employment.

The purpose of this presumption is to reduce litigation over conflicting medical evidence. However, the means used to reach this arguably proper purpose (giving presumptive weight to university doctors' conclusions) is not rationally related to any legitimate state interests. The haphazard results caused by this presumption show the unjust and irrational consequences that it produces. A case is totally built or destroyed based upon the university evaluation, and not upon the objective weighing of all the medical evidence by the Arbitrator and/or ALJ. Instead, the Arbitrator/ALJ must view the evidence presumptively in favor of the university report. The irrational results of this presumption exceed the reasonable and legitimate interest of the people, causing it to violate Section 2 of the Constitution of Kentucky which states as follows:

Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a Republic, not even in the largest majority.

KRS 342.315(2) places an arbitrary power in a small privileged class and is therefore unconstitutional. The majority opinion fails to save its constitutionality by adding the qualification "unless that testimony is properly rebutted by the opponent of the evidence."