HUNTER EXCAVATING, Appellant,

v.

Gordon BARTRUM; Hon. Irene Steen, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2004–SC–0485–WC.

Supreme Court of Kentucky.

May 19, 2005.

Rehearing Denied Aug. 25, 2005.

Paul E. Jones, Terri Smith Walters, Jones, Walters, Turner & Shelton, PLLC, Pikeville, Counsel for Appellant.

Thomas W. Moak, Stumbo, Moak & Nunnery, Prestonsburg, Counsel for Appellee.

## OPINION OF THE COURT

As amended effective July 15, 2002, KRS 342.316(3) sets forth a two-step "consensus" procedure for evaluating x-ray evidence of coal workers' pneumoconiosis. KRS 342.316(13) creates a presumption that a consensus x-ray classification is correct absent clear and convincing evidence to the contrary. Appealing an order that denied his application for benefits, the claimant asserted that KRS 342.316(3) and the accompanying regulations deprived him of a meaningful opportunity to rebut the consensus, thereby violating his right to due process under the constitutions of the United States and Kentucky.

Considering the appeal en banc, a majority of the Court of Appeals determined that the limit the statute and regulations place on the number of x-rays and x-ray reports that may be submitted to rebut a consensus denies the parties' constitutional right to a fair hearing. A minority was of the opinion that the statute is constitutional but that 803 KAR 25:009, § 3(1) exceeds its statutory authority by prohibiting additional x-rays and reports from being submitted to rebut a consensus. We conclude that KRS 342.316(3) is constitutional but that 803 KAR 25:009, § 3(1) and (2) conflict with KRS 342.316(13) to the extent that they prohibit additional reports of the x-rays that were considered in the consensus process. To that extent, they are void.

The claimant's last exposure to coal dust was on August 29, 1997. On August 5, 2002, he applied for benefits under the newly-enacted KRS 342.792. He filed with his application an April 8, 2002, x-ray and Dr. Wicker's report that the x-ray was quality 1 and showed category 1/0 pneumoconiosis. The employer then had him examined by Dr. Broudy and filed an October 23, 2002, x-ray as well as a report that it was quality 1 and negative. Dr. Broudy's narrative report stated that there was no evidence of pneumoconiosis or chronic lung disease due to inhaling coal dust.

The Commissioner of the Department of Workers' Claims determined that the reports were not in consensus. The parties' x-rays were then forwarded to three other "B" readers who were hired by the Department of Workers' Claims. Dr. Schulthesis reported that x-ray "L," taken on October 23, 2002, was negative, and Dr. Coburn reported that x-ray "C," taken on April 18, 2002, was negative for pneumoconiosis but revealed osteophytes in the thoracic spine. Dr. Vuskovich interpreted x-ray "L" and classified it as category 1/0. All rated the x-ray they read as being quality grade 1.

The Commissioner certified that there was a consensus. Shortly thereafter, the claimant filed a report from Dr. Patel, a "B" reader who interpreted a June 7, 2001, chest x-ray as being quality 2 and revealing category 1/0 pneumoconiosis. He also filed a July 16, 2001, report of a clinical evaluation by Dr. Rasmussen who appears to have ordered the chest x-ray. Dr. Rasmussen agreed with the diagnosis and reported that there was no evidence of significant lung impairment. The employer deposed Drs. Coburn and Broudy who confirmed their previous findings.

When summarizing the claimant's evidence, the ALJ stated that the reports from Drs. Rasmussen and Patel were not considered because "the statute does not allow the filing of more than one x-ray by either party." Noting that the consensus

classification was negative and that no party had challenged it within 30 days after the Commissioner's notice as permitted by 803 KAR 25:009, § 2(7), the ALJ determined that the consensus was presumed to be correct and dismissed the claim.

KRS 342.316 provides, in pertinent part, as follows:

(3) The procedure for filing occupational disease claims shall be as follows:

(a) The application for resolution of claim shall set forth the complete work history of the employee with a concise description of injurious exposure to a specific occupational disease, together with the name and addresses of the employer or employers with the approximate dates of employment. The application shall also include at least one (1) written medical report supporting his claim.[1] This medical report shall be made on the basis of clinical or X-ray examination performed in accordance with accepted medical standards and shall contain full and complete statements of all examinations performed and the results thereof. The report shall be made by a duly-licensed physician. The commissioner shall promulgate administrative regulations which prescribe the format of the medical report required by this section and the manner in which the report shall be completed.

1. For coal-related occupational pneumoconiosis claims, each clinical examination shall include a chest X-ray interpretation by a National Institute of Occupational Safety and Health (NIOSH) certified "B" reader. The chest X-ray upon which the report is made shall be filed with the application as well as spirometric tests when pulmonary dysfunction is alleged.

. . . .

(b) To be admissible, medical evidence offered in any proceeding under this chapter for determining a claim for occupational pneumoconiosis resulting from exposure to coal dust shall comply with accepted medical standards as follows:

1. Chest X-rays shall be of acceptable quality with respect to exposure and development and shall be indelibly labeled with the date of the X-ray and the name and Social Security number of the claimant. Physicians' reports of X-ray interpretations shall: identify the claimant by name and Social Security number; include the date of the X-ray and the date of the report; classify the X-ray interpretation using the latest ILO Classification and be accompanied by a completed copy of the latest ILO Classification report. Only Interpretations by National Institute of Occupational Safety and Health (NIOSH) certified "B" readers shall be admissible.

. . . .

3. The commissioner shall promulgate administrative regulations pursuant to KRS Chapter 13A as necessary to effectuate the purposes of this section. . . .

---

1. The Court of Appeals' majority was concerned that because KRS 342.316(3)(a) states "at least one" medical report, it might imply that a worker could submit more than one x-ray report but that the employer was limited by KRS 342.316(3)(b)4.d. to one such report. A more reasonable interpretation is that at least an x-ray report is required but that the report of a clinical evaluation with spirometry may also be submitted if pulmonary impairment is alleged. See KRS 342.316(3)(a)1., which permits spirometric tests to be filed when pulmonary impairment is alleged; see also KRS 342.316(3)(b)4.d., which directs the employer to include spirometry in its examination if pulmonary impairment is alleged. The two types of evaluations commonly are performed by different physicians and reported separately.

4. The procedure for determination of occupational disease claims shall be as follows:

a. Immediately upon receipt of an application for resolution of claim, the commissioner shall notify the responsible employer and all other interested parties and shall furnish them with a full and complete copy of the application.

b. The commissioner shall assign the claim to an administrative law judge....

....

d. Within forty-five (45) days of assignment of a coal workers' pneumoconiosis claim to an administrative law judge, the employer shall cause the employee to be examined by a physician of the employer's choice and shall provide to all other parties and file with the commissioner the X-ray interpretation by a "B" reader.... The commissioner shall determine whether the X-ray interpretations filed by the parties are in consensus.

e. If the readings are not in consensus, the commissioner shall forward both films, masking information identifying the facility where the X-ray was obtained and the referring physician, consecutively to three (3) "B" readers selected randomly from a list maintained by the commissioner for interpretation. *Each "B" reader shall select the highest quality film and report only the interpretation of that film.* The commissioner shall determine if two (2) of the X-ray interpretations filed by the three (3) "B" readers selected randomly are in consensus. If consensus is reached, the commissioner shall forward copies of the report to all parties as well as notice of the consensus reading which

shall be considered as evidence. If consensus is not reached, the administrative law judge shall decide the claim on the evidence submitted. (emphasis added).

f. "Consensus" is reached between two (2) chest X-ray interpreters when their classifications meet one (1) of the following criteria: each finds either category A, B, or C progressive massive fibrosis; or findings with regard to simple pneumoconiosis are both in the same major category and within one (1) minor category (ILO category twelve (12) point scale) of each other.

g. *The administrative law judge shall conduct such proceedings as are necessary to resolve the claim and shall have authority* to grant or deny any relief, including interlocutory relief, *to order additional proof,* to conduct a benefit review conference, *or to take such other action as may be appropriate to resolve the claim.* (emphasis added).

....

(13) .... The consensus classification shall be presumed to be the correct classification of the employee's condition unless overcome by clear and convincing evidence. If an administrative law judge finds that the presumption of correctness of the consensus reading has been overcome, the reasons shall be specially stated in the administrative law judge's order.

X-rays and x-ray reports must comply with KRS 342.316(3)(b)1. in order to be admissible as evidence. Furthermore, KRS 342.316(3)(a)1. and KRS 342.316(3)(b)4.d. require that parties' x-ray interpretations be performed by a "B" reader, a term that is defined in KRS 342.794(3). KRS 342.794(1) provides for a list of qualified "B" readers who agree to

be hired by the Department under KRS 342.316(3)(b)4.e. to interpret chest x-rays when the parties' reports are not in consensus. Parties commonly refer to the three randomly-selected "B" readers who consider the x-rays in a given claim as a consensus panel.

Relying on its statutory authority to regulate the practices and procedures for processing workers' compensation claims, the Department promulgated 803 KAR 25:009 on December 18, 2002. 803 KAR 25:009, § 4(5) provides that if a party challenges a consensus, the ALJ "may allow timely cross-examination of a medical evaluator that participated in the consensus process at the expense of the participating party." This appeal concerns the validity of 803 KAR 25:009, § 3(1), which prohibits the parties from submitting any x-ray readings in addition to those submitted with the initial application and response, and 803 KAR 25:009, § 3(2), which prohibits an ALJ from considering any x-ray readings but those initially submitted by the parties and the readings of the three neutral experts.

 Like the university evaluator procedure that was at issue in *Magic Coal Co. v. Fox,* 19 S.W.3d 88 (Ky.2000), the apparent purpose of KRS 342.794(1) and the second level of the consensus procedure set forth in KRS 342.316(3)(b)4.e. is to provide the ALJ with additional evidence from three "B" readers who are unbiased. Like KRS 342.315(2), KRS 342.316(13) provides a rebuttable presumption that the unbiased medical opinion is correct, but it adopts the more stringent "clear and convincing evidence" standard for rebuttal. Due process requires a meaningful opportunity to present such evidence. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Harlan Bell Coal Co. v. Lemar,* 904 F.2d 1042 (6th

Cir.1990); *Commonwealth v. Raines,* 847 S.W.2d 724 (Ky.1993), overruled on other grounds in *Commonwealth v. Howard,* 969 S.W.2d 700 (Ky.1998). It does not require the opportunity to be unlimited. Evidentiary restrictions may be imposed if they are reasonably calculated to advance a legitimate interest of the tribunal and do not unduly burden the interests of the parties. *Mathews v. Eldridge, supra; Jenkins v. McKeithen, supra.* Consistent with its statutory authority, the Department of Workers' Claims has a legitimate interest in the orderly and efficient processing of claims and in limiting the introduction of evidence that is no more than cumulative.

KRS 342.316 and KRS 342.732 require the presence of coal workers' pneumoconiosis to be proven with x-ray evidence. At the first level of the consensus process, each party submits evidence of the worker's condition in the form of a chest x-ray and a report stating what it reveals. Only the x-rays submitted at the first level of the process are considered by the panel at the second level. A consensus panel's charge under KRS 342.316(3)(b)4.e. is to review the x-rays in evidence, to choose the highest quality x-ray, and to interpret it. Stated otherwise, the question before the panel is: "What does the highest quality x-ray in evidence show?" For that reason, additional reports addressing the x-rays the panel considered could rebut a consensus classification if sufficiently persuasive, but reports of additional x-rays the panel did not consider could not.

 We are aware of nothing in KRS 342.316(3) that prevents a party from introducing the type of evidence that will rebut a consensus classification. In fact, KRS 342.316(3)(b)4.g. gives an ALJ broad discretion "to order additional proof ... or to take such other action as may be appropriate to resolve [a] claim." We conclude, therefore, that KRS 342.316(3) does not deny parties a meaningful opportunity

to rebut a consensus and that it is constitutional. In contrast, 803 KAR 25:009, § 3(1) and (2) defeat the purpose of KRS 342.316(13) and KRS 342.316(3)(b)4.g. by prohibiting a party from submitting additional reports of the x-rays the panel evaluated and prohibiting an ALJ from considering such reports. Therefore, they exceed the Department's authority to promulgate regulations and are invalid. *United Sign, Ltd. v. Commonwealth, Transportation Cabinet, Dept. of Highways,* 44 S.W.3d 794, 798 (Ky.App.2000); *Kentucky Alcoholic Beverage Control Board v. Anheuser–Busch, Inc.,* 574 S.W.2d 344, 345 (Ky.App.1978).

The decision of the Court of Appeals is affirmed in part and reversed in part, and the claim is hereby remanded to an ALJ for further proceedings that are consistent with this opinion.

All concur.