Anthony DURHAM, Appellant,

v.

PEABODY COAL COMPANY; Honorable Richard Joiner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

Glenn Lutz, Appellant,

v.

Energy Conversion Corporation; Honorable J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

Gary Middleton, Appellant,

v.

Centennial Resources, Inc.; Honorable John B. Coleman, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 2007–SC–000792–WC, 2007–SC–000793–WC, 2007–SC–000794–WC.

Supreme Court of Kentucky.

Oct. 23, 2008.

Rehearing Denied Jan. 22, 2009.

---

Thomas Elmus Springer III, Adams Law Firm, Madisonville, KY, Counsel for Appellants, Anthony Durham, Glenn Lutz, and Gary Middleton.

Peter J. Glauber, Boehl, Stopher & Graves, LLP, Louisville, KY, Counsel for Appellee, Peabody Coal Company.

Anthony K. Finaldi, John Edward Ballerstedt, Jr., Ferreri & Fogle, PLLC, Louisville, KY, Counsel for Appellee, Energy Conversion Corporation.

Richard Christian Hutson, Sharlott Kay Thompson, Whitlow, Roberts, Houston & Straub, Paducah, KY, Counsel for Appellee, Centennial Resources, Inc.

## OPINION OF THE COURT

These appeals concern the consensus procedure that KRS 342.316 mandates in coal workers' pneumoconiosis claims. In each case, an ALJ dismissed the worker's claim, holding that he failed to rebut a consensus of three "B" readers that the best quality x-ray in evidence was negative. The Workers' Compensation Board affirmed. The Court of Appeals affirmed and rejected the workers' argument that the statute violates the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution by treating miners who suffer from coal workers' pneumoconiosis differently from workers who sustain a traumatic injury.

Each of the claimants worked in various coal mines for 30 to 35 years and filed an application for benefits. Each of them stated that he suffered from category 1 coal workers' pneumoconiosis but that he did not allege a pulmonary impairment from the disease. Following the procedure set forth in KRS 342.316(3) and discussed in *Hunter Excavating v. Bartrum,* 168 S.W.3d 381 (Ky.2005), the workers and their employers each submitted a chest x-ray and a "B" reader's interpretation of the x-ray. The workers' experts reported category 1/0, 1/1, or 1/2 disease, but the employers' experts reported category 0/0 or a complete absence of disease. Thus, the parties' reports in each case were not in consensus.[1] As required by KRS 342.316(3)(b)4.e., the x-rays submitted in each case were then interpreted by a panel of three "B" readers. The panel assigned to each case reached a consensus and determined that the best quality x-ray in evidence was category 0/0 or negative. Although KRS 342.316(13) permits a worker to rebut a panel's consensus with clear and convincing evidence, none of the workers offered rebuttal evidence. Thus, the ALJs who considered the claims dismissed them.

The workers argued before the Court of Appeals that the consensus procedure found in KRS 342.316 discriminates unlawfully between workers who are injured by a harmful occupational exposure to coal dust and those who become physically disabled by a traumatic injury.[2] They assert-

---

1. KRS 342.316(3)(b)4.f. requires two x-ray interpretations to be within the same major classification and within one minor classification to be in consensus.

2. The workers failed to raise to the Court of Appeals their present, more comprehensive

ed that the statute denies them equal protection in two significant ways. First, it requires them to submit clear and convincing evidence to rebut the panel's consensus, while other workers may prove an injury with only a preponderance of the evidence. Second, it limits them to proving the existence of the disease with x-ray evidence, which strips the ALJ of the discretion to consider a worker's credible testimony regarding breathing difficulties and the length and nature of the exposure to coal dust.

 The 14th Amendment to the United States Constitution requires persons who are similarly situated to be treated alike.[3] Workers' compensation statutes concern matters of social and economic policy. Statutes are presumed to be valid and those concerning social or economic matters generally comply with federal equal protection requirements if the classifications that they create are rationally related to a legitimate state interest.[4] Sections 1, 2, and 3 of the Kentucky Constitution provide that the legislature does not have arbitrary power and shall treat all persons equally. A statute complies with Kentucky equal protection requirements if a "reasonable basis" or "substantial and justifiable reason" supports the classifications that it creates.[5] Analysis begins with the presumption that legislative acts are constitutional.[6]

Although KRS 342.316 treats workers who suffer from coal workers' pneumoconiosis differently from those who sustain a traumatic injury, it is neither arbitrary nor unfair to the former group. KRS 342.316 employs a consensus procedure, but workers found to suffer from category 1 coal workers' pneumoconiosis and who have no respiratory impairment may be entitled to benefits under KRS 342.732(1)(a). Workers who sustain a traumatic injury may submit various types of proof, but they must prove a permanent impairment rating in order to receive any benefits under KRS 342.730(1). We conclude, however, that inherent differences between coal workers' pneumoconiosis and traumatic injuries provide a reasonable basis or substantial and justifiable reason for different statutory treatment.

Pneumoconiosis develops gradually and can be difficult to diagnose, as illustrated by the disparity in x-ray interpretations offered in each of these cases. The court noted in *Kentucky Harlan Coal Company v. Holmes,* 872 S.W.2d 446 (Ky.1994), that when amending KRS 342.316 and enacting KRS 342.732 in 1987, legislators relied on testimony from medical experts that coal workers who suffer from pneumoconiosis should be encouraged to find other employment but that even category 3 simple pneumoconiosis is not usually associated with any significant decrease in lung func-

argument that the statute unfairly treats individuals who suffer from coal workers' pneumoconiosis differently from those who sustain traumatic injuries or suffer from other occupational pneumoconioses or diseases. Thus, the argument is not preserved for our review.

3. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985).

4. *Id.,* 473 U.S. at 440, 105 S.Ct. at 3254, 87 L.Ed.2d at 320.

5. *Elk Horn Coal Corporation v. Cheyenne Resources, Inc.,* 163 S.W.3d 408 (Ky.2005); *Waggoner v. Waggoner,* 846 S.W.2d 704 (Ky. 1992).

6. *United Dry Forces v. Lewis,* 619 S.W.2d 489 (Ky.1981); *Sims v. Board of Education of Jefferson County,* 290 S.W.2d 491 (Ky.1956); *Brooks v. Island Creek Coal Co.,* 678 S.W.2d 791 (Ky.App.1984).

tion. The court also noted that the 1987 amendments were a legislative attempt to control the cost of coal workers' pneumoconiosis claims, particularly by workers with no significant respiratory impairment. The present statutes address those same concerns. As a rule, traumatic injuries occur suddenly and are more easily diagnosed. Workers who sustain traumatic injuries are not, as a rule, advised to change employment to avoid the risk of further injury. Even if we were convinced that the groups are similarly situated, we are not convinced that KRS 342.316 denies equal protection to coal workers who suffer from pneumoconiosis.

Although KRS 342.316(13) may appear to be discriminatory, it does not actually impose a greater burden of proof on workers who claim benefits under KRS 342.732. All claimants bear the burden of proof and the risk of nonpersuasion before the ALJ with regard to every element of a workers' compensation claim.[7] In order to sustain that burden, a claimant must go forward with substantial evidence to prove each element, in other words, with evidence sufficient to convince reasonable people.[8] Such evidence has also been equated to evidence sufficient to survive a defendant's motion for a directed verdict if the matter were being tried to a jury.[9] When met with equally convincing evidence, the claimant must offer more persuasive evidence in rebuttal or lose. When met with evidence more convincing than his own, a claimant's burden on rebuttal is even higher. KRS 342.316(13) acknowledges that reality.

In *Hunter Excavating v. Bartrum,* 168 S.W.3d 381, 385 (Ky.2005), the court determined that the consensus procedure found in KRS 342.316 does not deny due process to workers who suffer from coal workers' pneumoconiosis. The decision explains that the apparent purpose of the second level of the consensus process is much like that of the university evaluator procedure that was at issue in *Magic Coal Co. v. Fox,* 19 S.W.3d 88 (Ky.2000). KRS 342.315(1) permits an ALJ to order a university evaluation in order to obtain unbiased expert testimony whenever a medical question is at issue. KRS 342.315(2) provides a rebuttable presumption that the university evaluator's clinical findings and opinions accurately reflect the worker's condition.

KRS 342.316 requires all chest x-ray interpretations to be performed by certified "B" readers. The opinions of the "B" readers who testified for the parties in the present cases differed significantly regarding the presence and/or category of coal workers' pneumoconiosis and, thus, were not in consensus. In other words, although the claimants offered substantial evidence in the form of an x-ray interpretation of category 1 pneumoconiosis, their employers met that evidence with equally persuasive substantial evidence to the contrary. KRS 342.316(3)(b)4.e. provides an ALJ with the opinions of three unbiased "B" readers to help determine the claimant's actual condition in such cases. KRS 342.316(13) provides a rebuttable presumption that a consensus of the three "B" readers is correct but allows the presumption to be overcome with clear and convincing evidence. *Fitch v. Burns,* 782 S.W.2d 618, 622 (Ky.1989), explains that

---

7. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice,* 576 S.W.2d 276 (Ky.App.1979); *Young v. Burgett,* 483 S.W.2d 450 (Ky.1972); *Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963).

8. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986); *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky.1971).

9. *Kentucky Utilities Co. v. Hammons,* 284 Ky. 437, 145 S.W.2d 67, 71 (1940).

the concept of clear and convincing evidence "relates more than anything else to an attitude or approach to weighing the evidence" and refers to "evidence substantially more persuasive than a preponderance of the evidence, but not beyond a reasonable doubt."

If the three-member panel had agreed with the workers' experts, the workers would have prevailed by virtue of the presumption, without offering further evidence. In each of these cases, however, the panel determined unanimously that the worker did not suffer from category 1 pneumoconiosis. Only overwhelming evidence would reasonably overcome such evidence as well as the opposing party's evidence. That is the type of evidence to which KRS 342.316(13) refers. The provision imposes no greater burden than on any other worker whose evidence is met with very persuasive contrary evidence.

KRS 342.316 does not make it impossible to rebut the panel's consensus by restricting the evidence that may be submitted. The court noted in *Hunter Excavating v. Bartrum, supra,* that the legislature may impose evidentiary restrictions that are reasonably calculated to advance a legitimate interest of the tribunal and do not unduly burden the interests of the parties. The court also noted that the Department of Workers' Claims has a legitimate interest in processing claims efficiently and preventing parties from submitting evidence that is no more than cumulative. In other words, the Department has a reasonable basis for limiting any party to evidence that is relevant and not merely cumulative.

KRS 342.0011(1) requires a work-related harmful change in the human organism to be evidenced by "objective medical findings" and states that when used generally, the term "injury" includes occupational diseases. Thus, all those who seek workers' compensation benefits must prove the existence of work-related harmful changes with information that a physician gains through direct observation and/or testing that utilizes objective or standardized methods.[10] X-ray is the objective method by which physicians diagnose the presence of pneumoconiosis and categorize its severity. A worker's statements concerning the nature and duration of his exposure to coal dust may assist a physician in determining the cause of pneumoconiosis but are not objective medical findings regarding the presence of the disease or the disease category. Nor are a worker's statements describing symptoms such as breathing difficulties.

*Hunter Excavating v. Bartrum, supra* at 385, explains that the question before the panel of three "B" readers is: "What does the highest quality x-ray in evidence show?" The court stated that nothing in KRS 342.316(3) prevented a party from introducing the type of evidence that would rebut a panel's consensus and noted that KRS 342.316(3)(b)4.g. gives an ALJ broad authority to order additional proof. The court determined, however, that the version of 803 KAR 25:009 in effect at that time defeated the reason for permitting rebuttal because it prohibited a party from submitting additional reports of the x-rays that the panel considered and, to that extent, violated due process. The regulation was amended after the decision.

Parties to coal workers' pneumoconiosis claims submit a chest x-ray interpretation

---

10. KRS 342.0011(33); *Gibbs v. Premier Scale Co./Indiana Scale Co., Inc.,* 50 S.W.3d 754 (Ky.2001).

with the claim. The present version of 803 KAR 25:009, § 3(1) allows a party who seeks to rebut a panel's consensus to submit an additional interpretation of one of the x-rays in evidence. 803 KAR 25:009, § 4(5) permits the ALJ to "allow timely cross-examination of a medical evaluator that participated in the consensus process at the expense of the moving party." Moreover, KRS 342.316(3)(b)4.g. gives an ALJ broad authority to order additional proof.

■ 803 KAR 25:010, § 10(1) limits the parties to any workers' compensation claim to the direct testimony of two physicians except upon a showing of good cause and prior approval by an ALJ. Although nothing limits the types of evidence that parties to traumatic injury claims may submit, we perceive a legitimate state interest in treating coal workers' pneumoconiosis differently than traumatic injuries. The existence and category of pneumoconiosis are proven with x-ray evidence, but the evidence necessary to prove the existence and extent of a traumatic injury varies with the type of injury. That difference provides a reasonable basis for treating the conditions differently.

The claimants have failed to show that the Court of Appeals erred in rejecting their argument that KRS 342.316 denies equal protection to coal miners seeking pneumoconiosis benefits. Thus, the decision of the Court of Appeals is affirmed.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER and VENTERS, JJ., concur.

SCOTT, J., dissents as follows.

The statutory scheme of KRS 342.316, treating workers' compensation claims for pneumoconiosis different than other claims, violates the Equal Protection clause of the United States and Kentucky Constitutions and is therefore unconstitutional. You simply can not, in these circumstances, fairly impose a more stringent, higher standard on one and not the other. Thus, I respectfully dissent from the majority opinion.