# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 20, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2007-SC-000235-WC

DATE 6-19-08 EnAGrown, D.C.

KNOTT FLOYD LAND COMPANY                                        APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
2006-CA-001910-WC
WORKERS' COMPENSATION BOARD NO. 05-00693

ANDREW FUGATE;
HON. GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                   APPELLEES

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) determined that the claimant proved a

permanent impairment rating from work-related hearing loss to his left ear but rejected

the university evaluator's opinion that he sustained an equal work-related hearing loss

to his right ear.  The Workers' Compensation Board reversed and remanded for an

award of benefits based on the evidence of work-related binaural hearing loss, and the

Court of Appeals affirmed.  We affirm because the evidence on which the ALJ relied

failed to provide a reasonable basis to reject the university evaluator's opinion.

The claimant was born in 1950, had a ninth-grade education, and served in the

United States Army for three years.  He worked from 1977 through the early part of

1999 as a mechanic and coal truck driver, after which the defendant-employer hired

him to work as a mechanic in a strip mine. He testified subsequently that his work exposed him to loud noises and that he wore earplugs about half of the time.

The claimant worked until June 28, 2004, when he awoke in the night with a severe headache and loss of balance and vision. He sought immediate medical treatment and eventually was referred to the University of Kentucky. On September 27, 2004, Joyce Wallen, an audiologist, noted complaints of significant hearing loss in the right ear since June 28, headaches, roaring in the right ear, and dizziness. She also noted an extensive history of noise exposure while running heavy equipment in the mining industry. Ms. Wallen performed an audiological evaluation that revealed significant hearing loss in both ears. She reported that the right ear had no usable hearing and that the left ear had a very significant high-frequency, sensorineural hearing loss, which probably resulted from occupational noise exposure.

The claimant underwent surgical procedures in December 2004 and February 2005 in order to treat persistent vertigo, which was later attributed to a non-work-related right ear condition. As a consequence, the ear became completely deaf. In April 2005 the claimant filed an application for benefits for work-related hearing loss. He testified subsequently that he thought his balance problems, dizziness, inability to localize sound, and hearing loss would prevent him from returning to his work.

Dr. Windmill performed the university evaluation on June 21, 2005, and completed a Form 108. He received a history of long-term noise exposure and of total hearing loss in the right ear following surgery to alleviate vertigo. Dr. Windmill noted that the claimant had greater hearing loss than would be expected for an individual of his age. He diagnosed a noise-induced hearing loss in the left ear and attributed the

present hearing loss in the right ear to the surgery. He assigned a 17% permanent impairment rating, which included the entire impairment in both ears. Assuming an equal hearing loss in both ears due to noise exposure, he attributed a 14% permanent impairment rating to noise-induced hearing loss. Dr. Windmill recommended the use of hearing aids. He also recommended the use of hearing protection devices whenever the claimant was exposed to loud noise and stated that work restrictions would be based on his ability to perform his duties while using such devices. Dr. Windmill stated in a supplemental report that the claimant's ability to localize sound was impaired as was his ability to understand speech, particularly in a noisy environment. Thus, he would be at risk for injury if he returned to his former job.

In a subsequent deposition, counsel for the employer asked Dr. Windmill to confirm that none of the right ear hearing loss resulted from work-related noise. He stated that the answer was neither "yes" nor "no" because the claimant probably sustained an equal hearing loss in his ears from work-related noise exposure, but the intractable vertigo and surgery to relieve it were not work-related. He explained that the objective measures, behavioral measures, and pattern of hearing loss indicated that the left ear hearing loss was work-related. His experience indicated that hearing loss due to occupational noise exposure tends to be bilateral and symmetrical. Thus, he thought it reasonable to assume that the claimant probably experienced a symmetrical, noise-induced hearing loss before the onset of the non-work-related condition. In an attempt to correct for the effects of the surgery, a situation that the AMA <u>Guides to the Evaluation of Permanent Impairment</u> (<u>Guides</u>) does not address, he calculated a 14% permanent impairment rating due to noise exposure by assuming a symmetrical hearing

3

loss and doubling the impairment for the left ear. Questioned about the formula the Guides set forth for calculating a binaural hearing impairment, he stated that it weights the impairment in the better ear by a factor of five. For that reason, the post-surgical permanent impairment rating is only 3 percentage points greater than then the rating attributed to occupational noise. Although Dr. Windmill acknowledged "a little possibility" that the claimant had no right ear hearing loss before the onset of the condition resulting in surgery, he thought it unlikely. He stated subsequently that he had no reason to think that the noise-induced hearing loss in the right ear was any less than that in the left.

Dr. Woods evaluated the claimant's hearing in November 2005 for the employer and submitted a report. After taking a history and performing an audiological examination, he diagnosed probable sudden hearing loss in the right ear and high tone sensorineural hearing loss in the left. He assigned a 16% permanent impairment rating to the present degree of hearing loss, which was based on a 44.9% binaural hearing impairment (33.8% left monaural and 100% right monaural). Although he did not agree with Dr. Windmill's figures, Dr. Woods did agree with his logic in calculating the amount of noise-induced impairment. Factoring out the right ear deafness after surgery, he attributed a 12% permanent impairment rating to occupational noise exposure, basing the figure on a 33.8% binaural hearing impairment (33.8% left monaural and 33.8% right monaural).

When deposed, Dr. Woods testified that the claimant's left ear hearing loss decreased his ability to hear frequencies in the range of speech, but he could function well if he could see the speaker and there was no background noise. He stated that the

4

non-work-related right ear problem that began in June 2004 complicated the attempt to determine the extent of noise-induced hearing loss. He explained that the Guides use a multi-step formula for calculating a permanent impairment rating based on hearing loss. The formula requires the amounts of hearing loss at various frequencies to be added to determine the amount of impairment in each ear (monaural hearing impairment). The two monaural impairments are then combined to reach a binaural hearing impairment, which is then converted into a whole-body permanent impairment rating. He stated that the Guides permit a physician to make a judgment call when a particular situation is not addressed. Addressing aging specifically, they direct a physician to calculate a permanent impairment rating based on the entire hearing loss and then to use clinical judgment to apportion it between or among causes.[1]

Dr. Woods explained that because the Guides provide no direction in the present circumstances, he used his best clinical judgment when assigning work-related impairment. He agreed with Dr. Windmill that work-related hearing loss typically is equal bilaterally but noted that it is not always equal. Although he acknowledged a possibility that the claimant had normal hearing in the right ear before the June 2004 incident and surgeries, he stated that he thought it unlikely. Dr. Woods attributed the claimant's inability to localize sound to the total deafness in the right ear as a result of the surgery and did not think that the work-related hearing loss, by itself, would restrict his ability to perform his work. He stated that he recommended the use of hearing protection by any worker exposed to ambient noise that exceeds 80-85 decibels and

---

[1]The court determined in AK Steel Corp. v. Johnston, 153 S.W.3d 837 (Ky. 2005), that KRS 342.7305 does not require age-related impairment to be excluded from a permanent impairment rating in a claim for noise-induced hearing loss.

5

that earplugs do not prevent an individual from hearing warning signals and other protective sounds in the workplace.

Donald Joe Woolwine performed a vocational evaluation. He noted that the claimant had twice been denied social security disability benefits. In his opinion, however, the claimant's restrictions and limitations precluded him from returning to any work for which he was suited by training and experience. He had no transferable skills and was not a candidate for vocational rehabilitation.

The employer conceded that the claimant sustained a work-related, noise-induced hearing loss in his left ear. It asserted that he failed to prove such a hearing loss in his right ear and, therefore, to meet the 8% permanent impairment rating that KRS 342.7305(2) requires for income benefits. The employer characterized as merely speculative the medical opinions that he sustained noise-induced hearing loss in the right ear, and it argued that they did not rise to the level of reasonable medical probability necessary to support an award. The ALJ agreed, stating as follows:

> The medical opinion of Dr. Windmill speculating that plaintiff may also have had 7% hearing loss in the right ear prior to the fistula that caused total hearing loss in that ear is not found to be sufficient to find work-related hearing loss in that ear. Nor does Dr. Windmill's speculation to that effect outweigh the medical opinion of Dr. Woods, who opined it would be impossible to ascertain the level of work-related, noise-induced hearing loss, if any, in plaintiff's right ear that existed immediately prior to the fistula. Given the facts and evidence presented, Dr. Woods' opinion in this regard is found most credible. It is therefore determined that plaintiff can only prove a 7% work-related hearing loss in his left ear.

The court determined in <u>Magic Coal Co. v. Fox</u>, 19 S.W.3d 88 (Ky. 2000), that KRS 342.315(2) does not shift the burden of persuasion. It presumes that the clinical findings and opinions of a university evaluator accurately reflect a worker's medical

condition but permits an ALJ to disregard them by stating a reasonable basis for doing so. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986), explains that a party who fails to meet its burden of proof before the fact-finder must show on appeal that the decision was unreasonable under the evidence. The Board did not err in reversing the decision in the present case because the ALJ rejected the university evaluator's clinical findings and opinions without a reasonable basis. Moreover, the evidence compelled an award of benefits for both ears because the medical experts thought it likely that the claimant sustained a noise-induced hearing loss in both ears, agreed to the proper method for assigning a permanent impairment rating using the Guides, and did so.

Chapter 342 holds an employer liable for work-related harmful changes in the human organism without regard to any subsequent, non-work-related harm. It requires a work-related harmful change to be evidenced by objective medical findings, defines objective medical findings, and requires a permanent impairment rating to be assigned using the Guides. Neither Chapter 342 nor the Guides requires the extent of every harmful change to be measured directly. Both Dr. Windmill and Dr. Woods testified that the Guides permit a physician to use clinical judgment in situations that the Guides do not address. They agreed that the Guides do not address the situation presented in this claim, exercised clinical judgment, and agreed regarding the methodology for assigning a permanent impairment rating under the circumstances. Dr. Woods stated that the difference in the permanent impairment ratings they assigned probably resulted from a difference in the audiological test results.

The ALJ concluded that the evidence of a noise-induced impairment in the right ear was merely speculative based on Dr. Woods' statement that it was "impossible to

7

know" the amount of noise-induced impairment in the right ear because of the subsequent, non-work-related condition. A fair reading of Dr. Woods' testimony indicates, however, that he also thought it unlikely that the claimant sustained no noise-induced right ear impairment. He indicated that the noise-induced hearing loss in the right ear was likely to equal that in the left ear and also indicated that he assigned the work-related binaural impairment on that basis. In contrast, he refused to guess what portion of the claimant's hearing loss might be due to aging. Under the circumstances, the words "impossible to know" could not reasonably be viewed to mean that he thought it impossible to determine the amount of work-related hearing loss that the claimant was likely to have sustained in the right ear.

No medical evidence refuted the physicians' assumption that the claimant's work-related hearing loss probably was bilateral and symmetrical. Nor did any medical evidence indicate that the Guides failed to authorize the method that they used to assign a permanent impairment rating based on noise-induced hearing loss. Under the circumstances, no reasonable basis supported a conclusion that the percentages they assigned were merely speculative. On remand, the ALJ must award benefits based on the evidence of work-related binaural hearing loss.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
KNOTT FLOYD LAND COMPANY:

H. BRETT STONECIPHER
FERRERI & FOGLE
300 EAST MAIN STREET
SUITE 500
LEXINGTON, KY 40507


COUNSEL FOR APPELLEE,
ANDREW FUGATE:

RANDY G. SLONE
SLONE & BATES, PSC
79 W. MAIN STREET
P.O. BOX 787
HINDMAN, KY 41822