# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000426-WC

REM COMPANY, INC.,
D/B/A ARTICLEAN                                                          APPELLANT


                        ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-001838-WC
                        WORKERS' COMPENSATION NO. 11-74810


ROBERT CUMMINS;
HONORABLE R. SCOTT BORDERS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                              APPELLEES


## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Appellant, REM Company, Inc., d/b/a Articlean ("REM"), appeals a

decision of the Court of Appeals which affirmed a Workers' Compensation

Board ("Board") opinion and Administrative Law Judge's (ALJ) opinion and

award which granted workers' compensation to Appellee, Robert Cummins.

REM argues that the ALJ erred by not applying the direct and natural

consequences rule in this matter and that Cummins's claim should have been

barred. For the below stated reasons, we affirm the Court of Appeals.

Cummins has a history of back injuries. In 2004, he was hit in the back

and developed a bone spur. Dr. Timothy Kriss performed a two-level, left-

sided, unilateral L4/L5 and L5/S1 discectomy surgery. The surgery was successful and Cummins suffered no ongoing symptoms. He was released to work with no restrictions.

In 2009, while working for REM, Cummins suffered a work-related injury while lifting. He was diagnosed with a right-sided L4/L5 disc herniation. Dr. James Bean performed a right L4/L5 lumbar discectomy. Again, the surgery was successful and Cummins was released to work with no restrictions. Cummins entered into a workers' compensation settlement with REM for the injury which included a waiver of his rights to future medical benefits.

The injury which is the focus of this appeal occurred in June 2011, while Cummins was on a work-related trip to install ozone units in Nevada and California. Cummins stated that while pulling on a unit which shifted while being delivered, Cummins felt pain in his low back. Cummins initially did not feel much discomfort, but as the trip continued the pain worsened. Cummins was unable to drive the company truck and had to recline his seat to obtain some relief from his discomfort. He said the pain emanated in his low back and left buttocks which radiated down his left leg when he coughed.

In August 2011, Cummins was seen by Dr. Bean who diagnosed him with a recurrent disc herniation. Dr. Bean took Cummins off of work and recommended he undergo surgery. Cummins filed for workers' compensation in November 2011.

The ALJ bifurcated the claim to first determine whether Cummins had suffered a work-related injury and whether the proposed surgery was

2

compensable. As a part of the claim, Cummins testified that he began to experience back pain while on the trip to Las Vegas and California. He also testified that he did not experience pain from one particular event or direct trauma, but as he was putting an ozone unit on the wall he felt a "good twitch" and a burning sensation.

Cummins submitted the report of Dr. Bean to support his claim. Dr. Bean concluded that Cummins's current injury was unrelated to his 2009 injury. Dr. Bean noted that the 2011 injury is on Cummins's left side and his 2009 injury was on the right side. Dr. Bean admitted that Cummins's 2004 surgery was also on the left side, but pointed out he was symptom free from that surgery prior to 2011. Additionally, Cummins's physical labor during the trip consisting of lifting ozone units led Dr. Bean to conclude the current herniation is work-related.

REM rebutted the claim by arguing that Cummins was actually symptomatic from his 2009 injury at the time of the alleged 2011 injury. REM noted that Cummins had to take work breaks to relieve discomfort on long trips and that he took Ibuprofen for progressive lumbar spine pain. REM filed the report of Dr. Daniel Agnew who believed there was no indication Cummins suffered a new injury. Instead, Dr. Agnew believed Cummins's symptoms are related to the 2009 injury. A report from Dr. Kriss was also filed. He stated that if the history he heard regarding Cummins's alleged injury is true, then his condition is work-related.

In an interlocutory opinion and order, the ALJ found that Cummins suffered a new work-related injury to his lumbar spine in 2011. He relied on Dr. Bean's report and Cummins's own testimony to conclude the injury occurred while lifting ozone units during the work-related trip. The ALJ ordered REM to pre-certify the surgery which was performed by Dr. Bean.

REM filed a petition for reconsideration of the interlocutory opinion and order. In support, REM submitted the testimony of several of Cummins's co-workers who went on the trip to California and did not remember him exhibiting any pain or discomfort. One individual observed Cummins bowling and riding go carts during the trip. A new report from Dr. Kriss was also filed where he stated that he changed his mind regarding the nature of Cummins's injury. He now concluded that the injury is degenerative and not work-related. The ALJ denied the petition.

Prior to the final hearing, Dr. Bean provided additional testimony. He still believed that Cummins's injury was work-related and was distinct from the 2009 injury. In response to the testimony of Cummins's co-workers, Dr. Bean stated that it was quite possible that Cummins could have engaged in physical activities on the trip after the injury because a herniated disc does not always cause immediate symptoms. It may begin as a low-grade, nagging pain. He admitted that degenerative changes to Cummins's spine could have contributed to the new injury. He attributed 25% of Cummins's 2011 injury to the 2004 surgery, 25% to the 2009 surgery, and 50% to the injury itself. Dr.

4

Bean concluded Cummins had a 10% pre-existing, active impairment at the time of the 2011 injury.

After a review of the evidence, the ALJ again concluded that Cummins suffered a new work-related injury to his back while lifting an ozone unit in 2011. He awarded Cummins temporary total disability benefits, medical benefits, and vocational rehabilitation. Permanent partial disability benefits were also awarded based on a 21% functional impairment rating.

REM filed a petition for reconsideration requesting that the ALJ consider the direct and natural consequence rule and provide further fact finding regarding the vocational rehabilitation benefits.[1] The ALJ denied the petition, but did enter an order correcting several typographical errors. In regards to the direct and natural consequence rule, the ALJ stated:

> The [ALJ] acknowledges the fact that Dr. Kriss changed his opinion in regards to the issues of causation but does not find his testimony persuasive. In fact, it appears Dr. Kriss based his opinion on the lay witnesses presented by [REM] whose testimony the [ALJ] found to be inconsistent and not credible. The [ALJ] has found [Cummins's] story of how he injured himself to have been consistent throughout his deposition testimony and his hearing testimony presented in front of the undersigned ALJ on two separate occasions.
>
> In addition, the [ALJ] has reviewed Dr. Bean's testimony once again and believes that his testimony was sufficient to enable [Cummins] to meet his burden of proving that he suffered an injury as defined by the Act sufficient enough to entitle him to permanent partial disability benefits. Dr. Bean clearly believes that the incident at work necessitated the need for his most recent surgeries and resulted in his current disability. While Dr. Bean acknowledged that [Cummins] had some prior active back problems he did not attribute his current condition to that pre-existing active condition.

---

[1] REM has not appealed the award of vocational rehabilitation benefits to this Court.

Further, the [ALJ] did not find the lay testimony presented by [REM] to be credible or persuasive. As mentioned in the opinion and award, the ALJ believes that the timing of the presentation of this testimony is somewhat tenuous and appears to have been presented solely in attempts to set aside the interlocutory findings of the undersigned. The [ALJ] simply did not believe that this testimony was persuasive or credible.

REM appealed to the Board. In affirming the ALJ, the Board stated:

To the extent REM argues the ALJ did not adequately address its argument based on the 'direct and natural consequences rule,' we disagree. In the June 9, 2014 Order on Reconsideration, the ALJ specifically acknowledged this argument and reiterated his belief that a new work injury had occurred, and his reliance on Dr. Bean's opinion for this finding. In determining a distinct injury occurred, the ALJ implicitly rejected the argument that Cummins'[s] condition flowed directly from the 2009 injury. Upon review of the ALJ's interlocutory and final orders in this case, we are convinced he completely grasped REM's theory of the case and rejected it. Furthermore, he sufficiently stated his reasoning and the evidence upon which he relied in reaching this conclusion.

The Court of Appeals also affirmed and this appeal followed.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence.

6

*Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985). Similarily, the ALJ has the sole authority to judge all reasonable inferences to be drawn from the evidence. *Miller v. East Kentucky Beverage/Pepsico, Inc.*, 951 S.W.2d 329 (Ky. 1997). The ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or same adversary party's total proof. *Magic Coal Co. v. Fox*, 19 S.W.3d 88 (Ky. 2000).

REM argues that the direct and natural consequence rule should be applied in this matter to bar Cummins's workers' compensation claim. The direct and natural consequence rule states that "a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." *Addington Resources, Inc. v. Perkins*, 947 S.W.2d 421, 423 (Ky. App. 1997) quoting *Larson's Workers' Compensation Law* §13.11 (1996). In other words, "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment" and is compensable. 1 *Larson's Workers' Compensation Law* §10 (2004). Presumably REM makes this argument because if the 2011 injury flowed from the 2009 injury then the settlement agreement entered into by Cummins would prevent this workers' compensation award.

The direct and natural consequences rule is not applicable in this case. The ALJ clearly stated that, based on Dr. Bean's opinion, Cummins's 2011

7

injury is different from his 2009 injury. He also believed Cummins's testimony that he experienced pain while lifting an ozone unit while on the work-related trip, which supports a finding that an injury occurred. Even if the 2009 injury made Cummins more susceptible to future injuries, the fact that the ALJ found the 2011 injury was a new and distinct work-related injury, means the settlement agreement waiver does not apply as a matter of law. The ALJ was within his discretion to rely on that evidence, and his conclusion that the direct and natural consequences rule does not apply is supported by the record.

For the reasons stated above, we affirm the decision of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT,
REM COMPANY, INC.,
D/B/A ARTICLEAN:

Daniel J. Urbon

COUNSEL FOR APPELLEE,
ROBERT CUMMINS:

Charles William Gorham