**Willie THOMAS, Appellant,**

v.

**UNITED PARCEL SERVICE; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2000–SC–1038–WC.

Supreme Court of Kentucky.

Oct. 25, 2001.

Tamara Todd Cotton, Hardy, Logan, Priddy & Cotton, Louisville, Counsel for Appellant.

Thomas L. Ferreri, Ferreri & Fogle, Louisville, Counsel for Appellee United Parcel Service.

## OPINION OF THE COURT

On May 14, 1997, the claimant sustained a crush injury that resulted in right transverse process fractures at L1–4. The diagnosis related estimate (DRE) model for assessing permanent impairment from the applicable edition of the AMA *Guides* assigned a 5% impairment to a single transverse process fracture, but the university evaluator was of the opinion that the claimant's actual impairment from four such fractures would be much greater and would more accurately be measured by the range of motion model. After determining from the evidence that the DRE model must be used, the Administrative Law Judge (ALJ) assessed a 19% impairment, indicating a reliance on the university evaluator's testimony that four 5% impairments warranted a combined impairment of 19%. The Workers' Compensation Board (Board) affirmed, but the Court of Appeals reversed, determining that the ALJ had misconstrued the university evaluator's testimony. This appeal by the claimant followed.

The claimant's injury resulted in five left rib fractures, right transverse process fractures at L1–4, a lung contusion, left kidney contusions, and a left shoulder injury.[1] After a hospitalization, physical therapy, and work hardening, the claimant returned to work on October 6, 1997. He was able to perform his former job, albeit on a slower-paced shift, and stipulated that he earned the same or greater wages than before the incident. He testified, however, that he continued to experience back pain when negotiating steps or performing heavy or overhead lifting. He also testified to difficulty breathing in hot weather and to kidney discomfort.

Dr. Nickerson, who was appointed as a university evaluator under KRS 342.315, examined the claimant and reviewed his medical records. He diagnosed a left rotator cuff tear, multiple rib fractures, right transverse process fractures at L1–4, pulmonary contusions, and left kidney contusions. Applying the diagnosis related estimate (DRE) model at Chapter 3, page 102 of the Fourth Edition of the AMA *Guides*, he assigned a 5% impairment rating for the transverse process fractures and an 8% impairment rating for the left shoulder.

---

1. The subsequent claim also sought benefits for two earlier injuries, but the ALJ determined that they were barred by limitations. Only the 1997 injury is at issue in this appeal, and only that evidence will be addressed.

He reported that the claimant's pulmonary and renal function studies were normal.

The section of the DRE model that deals with lumbosacral impairments indicates that a transverse process fracture is classified as a category II (5%) impairment if there is no vertebral body fracture because it does not disrupt the spinal canal. The model contains no explicit provision concerning the addition of impairments due to multiple transverse process fractures. A question arose, therefore, about how to arrive at a proper impairment rating for four transverse process fractures.

When deposed, Dr. Nickerson indicated that the *Guides* contain two methods for assessing a functional impairment, the DRE model and the range of motion model. He testified that the Form 107 that was provided by the Department of Workers' Claims directed him to use the DRE model unless another method was authorized by the *Guides*. He explained that under the *Guides* the only reason to utilize the range of motion model was if an injury was not clearly enough defined in the DRE model. Furthermore, he indicated that because a transverse process fracture fit into one of the DRE categories, he had used that model to assess the claimant's impairment and had assigned a 5% impairment. He admitted, however, that because multiple transverse process fractures were more likely to cause soft tissue damage and to affect range of motion than one such fracture, his personal opinion was that the range of motion model would more fairly and accurately appraise the nature and extent of the claimant's injury.

When cross-examined, Dr. Nickerson testified that Table 75 (found at Chapter 3, page 113 of the *Guides*) applied to the calculation of impairments under the range of motion model. Explaining the multi-step process for calculating such an impairment, he indicated that Table 75 is used in the range of motion model. It assigns a 5% impairment to a single transverse process fracture and directs the physician to use the combined values chart for multiple fractures. Thus, four transverse process fractures would warrant a 19% impairment. Dr. Nickerson indicated that a separate impairment rating would then be assigned based upon valid range of motion testing. Finally, he indicated that the 19% impairment and the range of motion impairment would be combined using the combined values chart. Dr. Nickerson testified that he did not perform range of motion testing and, therefore, could not state the claimant's impairment under that model without further examination.

The ALJ determined that Dr. Nickerson's testimony was entitled to presumptive weight and that his conclusion that he was required to use the DRE model was supported by the text of *Guides*, noting that it:

specifically directs the examiner to use the DRE model unless he cannot place the patient into an impairment category or a disagreement exists about which of two or three categories to utilize. In that case, the Range of Motion Model should be used as a differentiator. (See, Section 3.3f, p. 101.) A transverse process fracture is clearly included in DRE Category II, and there is no need to utilize the Range of Motion Model as a differentiator in this claim. Thus, Thomas' motion for a second KRS 342.315 evaluation for range of motion testing was overruled....

Turning to Dr. Nickerson's testimony that each transverse process fracture was entitled to a 5% impairment and that four 5% impairments warranted a 19% impairment under the combined values chart, the ALJ determined that the fractures (19% impairment) and left shoulder injury (8% impairment) resulted in a permanent impairment

rating of 27%. The ALJ then awarded income benefits based upon a 27% impairment under KRS 342.730(1)(c)2.

■ Appealing to the Workers' Compensation Board (Board), the employer asserted that the ALJ lacked the discretion to use the combined values chart and to assign a 19% impairment to the four transverse process fractures under the DRE model. Its position was that the ALJ was bound by Dr. Nickerson's testimony that the appropriate impairment under the DRE model was 5%. The Board determined, however, that there "are always rational exceptions" to the principle that the 1996 amendments to the Act deprived ALJs of discretion when assessing permanent, partial disability. It concluded that the ALJ had the discretion to use the combined values chart on these facts and affirmed. The Court of Appeals reversed, however, determining that Dr. Nickerson's testimony did not support the ALJ's conclusion because he had testified that the fractures clearly fit into DRE Lumbosacral Category II and had assessed a 5% impairment under that model. We reverse.

■ As noted by the ALJ, Dr. Nickerson was the university evaluator, and under KRS 342.315(2) his clinical findings and opinions are entitled to presumptive weight. As such, they constitute substantial evidence of the claimant's medical condition that may not be disregarded because no other physician testified concerning the extent of the claimant's AMA impairment. *Magic Coal Co. v. Fox*, Ky., 19 S.W.3d 88 (2000). Although Dr. Nickerson testified that the DRE model clearly applied to a transverse process fracture and that it assigned a 5% impairment to such a fracture, he also testified to his opinion that the model inadequately assessed the full extent of the claimant's impairment because he had sustained four

such fractures. Although he did not perform range of motion testing and, therefore, could not testify to the claimant's impairment under that model, he thought that the range of motion model would more accurately assess the claimant's actual impairment. As he explained that model, the resulting impairment would probably have been greater than 19% because it was likely that four transverse process fractures affected the claimant's range of motion. He also testified that under the combined values table four 5% impairments would combine to produce a 19% impairment.

It is undisputed that substantial evidence supports the ALJ's conclusion that the AMA Guides required the use of the DRE model for determining the impairment from a transverse process fracture. Nonetheless, although the DRE model addresses the impairment from a single transverse process fracture, it does not appear to contemplate that an individual might have sustained more than one such fracture and, therefore, does not address the increased impairment that Dr. Nickerson has testified that four such fractures would produce. In view of this and of his opinion concerning the extent of the claimant's actual impairment, we conclude that it was not unreasonable for the ALJ to rely on that portion of his testimony which indicated that four 5% impairments would result in a combined impairment of 19%. It is clear that the ALJ knew that Table 75 applied to the range of motion model and also knew that the DRE model assigned a 5% impairment to a single transverse process fracture. Under those circumstances, we are not persuaded that the ALJ misunderstood Dr. Nickerson's testimony but rather that she was both applying KRS 342.315(2) and exercising her limited prerogative as the finder of fact under KRS 342.730(1)(b) when she determined from

the available evidence that the four fractures caused a 19% impairment.

The decision of the Court of Appeals is reversed, and the decision of the ALJ is reinstated.

All concur.