# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 23, 2014
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2014-SC-000049-WC

DATE 11-13-14 zuuf Growth, D.C.

GONZALO SALAZAR                                                          APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2013-CA-000737-WC
WORKERS' COMPENSATION NO. 09-78724


DEPENDABLE ROOFING, INC.;
DR. SUK KI KIM, M.D.;
HONORABLE J. LANDON OVERFIELD,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                        APPELLEES


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

In this workers' compensation appeal, Appellant, Gonzalo Salazar, argues that the Court of Appeals and Workers' Compensation Board improperly reviewed his claim, that the Chief Administrative Law Judge ("CALJ") erred by relying on an impairment rating which is not consistent with the AMA *Guides*, and that the CALJ misapplied KRS 342.165(1). For the below stated reasons, we affirm the Court of Appeals.

Salazar began working for Appellee, Dependable Roofing, in 2009. In the early morning hours of September 3, 2009, the owner of Dependable Roofing, Brent Williamson, called Salazar's brother, Rigoberto Salazar, and asked if a

roof they were working on was protected from leaks because it was raining. It is in dispute whether Williamson asked the men to report to the jobsite, but regardless, Salazar, Rigoberto, and Muricio Salazar headed to the location.

When the three brothers arrived at the job site, Williamson was already there and determined that the roof was not leaking. Williamson testified that he told the brothers not to climb on the roof. However, Salazar and his brothers climbed onto the roof with the intention of placing a tarp over it. Rigoberto testified that the roof was approximately thirty to forty feet long and ten to twelve feet off the ground. He also testified that the pitch of the roof was "5-12 or 6-12" which refers to the slant of the roof falling at a rate of inches to feet. No safety equipment was used by the brothers while on the roof. Williamson testified that he did not think safety equipment needed to be used at this job site because the roof was of a normal pitch.

As the brothers walked around on the roof, Williamson told them to climb down. Almost instantly after Williamson gave that instruction, Salazar fell off of the roof. Salazar does not remember the events surrounding his fall. He was transported by ambulance to a hospital where he complained of head, shoulder, and back pain. He was diagnosed with a scalp laceration, fractured scapula, and multiple non-displaced lumbar transverse process fractures.

Salazar has not worked since the accident and filed for workers' compensation. He testified that he experiences pain in his head, upper back, and left shoulder. He also testified that prolonged walking or being in one

position for an extended period of time causes discomfort. Salazar does not believe that he can return to a job as a roofer due to its physical demands.

Salazar was evaluated by Dr. Jules Barefoot. He diagnosed Salazar with a comminuted fracture to the body of the left scapula, right posterior parietal non-depressed skull fracture, fracture of the right transverse processes from L1-L5, and a non-displaced fracture of the left interior facet of L5, all due to the work-related accident. He assessed a 36% impairment rating using the range of motion ("ROM") model[1] of the AMA *Guides*.

Treatment records from Dr. Jose Arias were filed outlining the treatment he provided. Dr. Arias believed that Salazar reached maximum medical improvement ("MMI") on May 24, 2010. He assessed an 8% impairment rating pursuant to the AMA *Guides* using the diagnosis related estimate ("DRE") method.[2] Dr. Arias also believed there was no medical reason preventing Salazar from returning to work, but that it was possible he might experience some pain if he did.

---

[1] The ROM method is used to evaluate a spinal impairment: 1) when an impairment is not caused by an injury, if the cause of the condition is uncertain, and the DRE [diagnosis related estimate] method does not apply, or an individual cannot be easily categorized in a DRE class; 2) when there is multilevel involvement in the same spinal region; 3) when there is alteration of motion segment integrity at multiple levels in the same spinal region, unless there is involvement of the cortico spinal tract; 4) when there is recurrent radiculopathy caused by a new (recurrent) disk herniation or a recurrent injury in the same spinal region; and 5) when there are multiple episodes of other pathology producing alteration of motion segment integrity and/or radiculopathy.

[2] The DRE method is the principal methodology used to evaluate an individual who has had a distinct spinal injury.

Salazar was also evaluated by Dr. Denis O'Keefe, a neurologist. Dr. O'Keefe diagnosed Salazar as status post-fracture of the transverse processes from L1-L5 on the right, and a non-displaced fracture of the inferior L5 facet on the left. He also noted a healed non-displaced right parietal skull fracture, a healed fracture of the left scapula, and a healed contusion of the left elbow. Dr. O'Keefe believed Salazar reached MMI and assessed a 13% impairment rating.[3] Dr. O'Keefe did not place any restrictions on Salazar's activities. In a supplemental report dated May 28, 2012, Dr. Barefoot specifically disagreed with Dr. O'Keefe's impairment rating assessment.

After reviewing the evidence, the ALJ made the following findings:

> Three different medical experts have given three different functional impairment ratings under *the Guides*. Dr. Barefoot goes into great detail explaining why his is the only competent rating. Unfortunately, Dr. Barefoot's quote which he attributes to dispositive instructions in *the Guides* is far from accurate. His quote attributed to *the Guides* was as follows:
>> As previously stated, the ROM method should be used if multi-level involvement and/or alteration of motion segment integrity has occurred in the same spinal region.
>
> That is not accurate. The actual quote taken, in part, from paragraph 15.8 at page 398 is as follows:
>> As previously stated (Section 15.2) the ROM method should be ***used only*** . . . (3) if multilevel involvement and/or alteration of motion segment integrity has occurred in the same spinal region; . . . (Italics original, <u>bold</u> added.)
>
> This language appears to be restrictive rather than mandatory.
>
> The quote from Dr. Arias relating to the sections of *the Guides* he used appears to be accurate. It must also be noted that, using the DRE methodology, fractures of transverse processes warrant impairment **ONLY** if the fracture is accompanied by

---

[3] Dr. O'Keefe admits that his impairment is not in accordance with the AMA *Guides* because he found the *Guides* rating excessive.

displacement. None of Plaintiff's fractures were accompanied by any displacement.

Concerning Plaintiff's permanent condition and functional impairment rating for his lumbar spine injuries, I find the opinions of Dr. Arias to be the most credible and convincing medical evidence in the record. Based on the opinions of Dr. Arias, I find that Plaintiff has an 8% functional impairment to the body as a whole but has no need for restrictions on his physical activity.

(Emphasis in original).

Along with those findings, the CALJ rejected Salazar's claim for enhanced benefits pursuant to KRS 342.165(1). In support of that claim, Salazar included in the record various OSHA regulations regarding the use of safety equipment. However, the CALJ found that there was "no credibility at all in [Salazar]'s claim that [Dependable Roofing] is guilty of a safety violation. [Salazar]'s injury was caused by his failure to follow the instructions of his employer, not because of any safety violation committed by [Dependable Roofing]."

Salazar appealed to the Workers' Compensation Board who affirmed. The Court of Appeals also affirmed and this appeal followed.

## I. THE WORKERS' COMPENSATION BOARD AND COURT OF APPEALS PROPERLY REVIEWED SALAZAR'S CLAIM

Salazar first argues that the Board and Court of Appeals did not properly review his claim. He argues that while the CALJ has discretion in making fact finding determinations, the Board has a duty to ensure that his rulings are in conformity with Chapter 342. Salazar claims that the Board and the Court of Appeals failed in its duty to oversee by rubberstamping the CALJ's opinion under the guise of his discretionary powers. We disagree and find that the

5

Board and Court of Appeals properly reviewed Salazar's claim as shown by our holdings on his other arguments of error.

## II. THE CALJ DID NOT CHOOSE AN IMPAIRMENT RATING WHICH IS INCONSISTENT WITH THE AMA *GUIDES*.

Salazar next argues that the CALJ abused his discretion by choosing to adopt the impairment rating from Dr. Arias because he believes it is inconsistent with the AMA *Guides*. Salazar believes that Dr. Arias's rating is incorrect because it rates only one vertebrae fracture at one level and he actually suffered from six fractures on five different levels. Salazar cites to *Thomas v. United Parcel Service*, 58 S.W.3d 455 (Ky. 2001), to argue that Dr. Arias was required to assign an impairment for each fractured vertebra and use the combined values chart to obtain a rating.

In *Thomas*, the ALJ found that the AMA *Guides* required the use of the DRE model rather than the ROM model to determine the claimant's impairment rating from a transverse process fracture. The only medical expert who testified in *Thomas* was a university evaluator who stated that four 5% impairments would combine to produce a 19% impairment under the combined values table. *Id.* at 456. The Court concluded in the absence of any countervailing evidence, it was not unreasonable for the ALJ to conclude four fractures caused a combined 19% impairment. *Id.* at 458-459.

In this matter, unlike *Thomas*, there were conflicting medical opinions provided. Dr. Arias and Dr. O'Keefe believed that the non-displaced lumbar fractures had completely healed and did not alter Salazar's motion integrity or

6

instability. The CALJ chose to find Dr. Arias's opinion the most credible because he believed that Dr. Barefoot's opinion was based on Salazar's subjective symptoms. The CALJ also found that Dr. Barefoot misquoted the AMA *Guides* in setting his impairment rating. While the CALJ could have adopted Dr. Barefoot's assessment, the evidence does not compel such a result. The CALJ did not err by adopting Dr. Arias's opinion.

## III. SALAZAR IS NOT ENTITLED TO ENHANCED BENEFITS PURSUANT TO KRS 342.165(1)

Salazar's last argument is that he is entitled to enhanced benefits pursuant to KRS 342.165(1) because he alleges Dependable Roofing committed a safety violation by not providing him fall protection equipment before he climbed on the roof. KRS 342.165(1) states in pertinent part:

> [i]f an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.

Salazar points to several OSHA regulations to support his contention that Dependable Roofing partially caused his accident.[4] Despite these regulations, we are unconvinced that Salazar is entitled to enhanced benefits.

To prevail on a claim for enhanced benefits under KRS 342.165, the injured employee must not only show that a safety violation was committed,

---

[4] Salazar cites to the following OSHA regulations: 29 CFR 1926.501(b)(11); 29 CFR 1926.502(d)(21); 29 CFR 1926.20; 29 CFR 1926.21; 29 CFR 1926.32.

but that the violation *caused* the work-related accident. Causation is a finding of fact to be made by the fact finder and will not be disturbed if supported by substantial evidence. *Apex Mining v. Blankenship*, 918 S.W.2d 225, 228 (Ky. 1996). The CALJ found that Salazar's injury was caused by his failure to follow Williamson's order and not from a safety violation. This finding is supported by Williamson's testimony that he told Salazar to not climb on the roof which the CALJ found to be credible. There is no compelling evidence to the contrary to require reversal.

For the above stated reasons, we affirm the opinion of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT,
GONZALO SALAZAR:

Daniel Caslin
Mary Michele Cecil

COUNSEL FOR APPELLEE,
DEPENDABLE ROOFING, INC.:

Judson Fuller Devlin

COUNSEL FOR APPELLEE,
DR. SUK KI KIM, M.D.:

Suk Ki Kim, M.D., *pro se*